UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DR. OLIVER JOVANOVIC,                           :

              Plaintiff,                    :          04 Civ. 8437 (PAC)

   -against-                                      :          <u>MEMORANDUM</u>
                                                             <u>OPINION AND ORDER</u>
THE CITY OF NEW YORK, DETECTIVE                  :
MILTON BONILLA, Shield No. 61, Individually
and in his official capacity, New York County       :
Assistant District Attorney LINDA FAIRSTEIN,
Individually and in her official capacity,              :

             Defendants.                   :

-------------------------------------------------------------X


HONORABLE PAUL A. CROTTY, United States District Judge:


      Almost ten years ago, in November, 1996, the Plaintiff, Oliver Jovanovic

("Jovanovic" or "Plaintiff"), was arrested, tried and convicted for rape, sodomy and kidnapping.

The local tabloids closely followed Jovanovic's prosecution and generated huge volumes of

coverage.  The matter became known as the "cybersex torture" case.  Jovanovic was convicted in

April 1998 and sentenced in May 1998 to a term of 15 years to life.  He was incarcerated for 20

months.  Upon appeal in December 1999, the Appellate Division First Department found

numerous trial errors, reversed his conviction and remanded for a new trial.

      Over the next 23 months, the District Attorney offered Jovanovic several plea

deals with no further jail time; first with a plea of guilty to a felony and later to a misdemeanor.

Jovanovic refused to plead guilty, maintained his innocence, and insisted upon trial.  On

November 1, 2001, the District Attorney moved to dismiss all charges; the motion was granted,

and all charges were dismissed with prejudice.

On October 28, 2004, almost three years after the indictment was dismissed with prejudice, Jovanovic instituted this action pursuant to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, malicious abuse of process and denial of his right to a fair trial by New York City Police Officer Milton Bonilla ("Bonilla") and former Assistant District Attorney Linda Fairstein ("Fairstein"). Specifically, Plaintiff alleges that Bonilla and Fairstein, while acting in their official capacities, fabricated evidence, gave false testimony, and made damaging extrajudicial statements to the press in an effort to secure a conviction against him. Plaintiff also sues the City of New York claiming a municipal policy or custom that gave rise to these constitutionally impermissible acts.

Defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) arguing: (1) that Jovanovic's claims are time barred; (2) probable cause existed for the arrest and prosecution; (3) the claim for malicious prosecution fails as a matter of law; (4) there is no claim for malicious abuse of process against Bonilla; (5) any "fair trial" claims fail as a matter of law; (6) both Defendants are entitled to qualified immunity; and (7) Plaintiff's claims for municipal liability fail as a matter of law.

On a motion to dismiss, the Court must accept as true all the factual allegations of the complaint and draw all inferences from these allegations in the light most favorable to Jovanovic. Upon review of the pleadings, using the applicable standards, the Court denies Defendants' motion in all respects, except with respect to the claim of malicious abuse of process. That claim is dismissed, with leave to replead.

# BACKGROUND[1]

On November 27, 1996, Jamie Ruzcek ("Ruzcek"), a twenty-year-old Barnard student, reported to Bonilla that she had been sexually assaulted by Jovanovic, a thirty-year-old doctoral candidate at Columbia University, with whom she had corresponded by e-mail prior to the alleged incident. (Compl. ¶¶ 22-23.)  Ruzcek told Bonilla that Jovanovic had assaulted her for twenty hours, starting on the night of November 22, 1996 and continuing through the day of November 23, 1996. (Compl. ¶ 23.)  Ruzcek provided a detailed and graphic statement of the incident, in which she alleged—among other heinous acts—that Jovanovic had hogtied her for nearly twenty hours, violently raped and sodomized her, struck her repeatedly with a club, severely burned her with candle wax, and repeatedly gagged her with a variety of materials. (Compl. ¶ 24.)

The physical evidence did not match Ruzcek's assertions.  A comprehensive gynecological examination of Ruzcek on November 27, 1996 found no bleeding, teeth marks, bruises, scratches, swelling, redness, or burn marks, all of which would be expected if Ruzcek's account were true. (Compl. ¶¶ 25, 27, 28, 30.)  Further, there was no forensic evidence to support Ruzcek's claims.  No traces of Jovanovic's DNA were found on the victim, her clothing, or any of the undergarments she wore on the night of the alleged assault. (Compl. ¶ 31.)  No blood was found on any of the victim's clothes, no ligature marks upon her body, and no abrasions about her mouth. (Compl. ¶¶ 33, 35-36.)  Hair and fiber tests showed no signs of a violent struggle or sexual assault. (Compl. ¶ 37.)

Ruzcek's allegations were questionable in other ways as well.  She had given contradictory accounts of the alleged assault to Bonilla, "changing critical facts every time she

---

[1] The background information is taken directly from the complaint, which for the purposes of this motion, must be accepted as true.

recounted the event." (Compl. ¶¶ 39, 46.) She waited four days full days before seeking medical treatment, "despite her claims that she experienced profuse bleeding, severe burns and intense pain." (Compl. ¶ 42.) Moreover, Ruzcek had "a history of making false sexual accusations, and in fact, had falsely accused her own father and uncle of sexual molestation," and a week before filing her own complaint against Jovanovic, Ruzcek had encouraged an acquaintance to file a false rape complaint against a New York University student. (Compl. ¶¶ 40-41.)

Despite the gravity of Ruzcek's allegations, Bonilla waited a full nine days before attempting to question Jovanovic. It is unclear whether Bonilla conducted any additional investigation during this nine-day period. On December 5, 1996, Bonilla went to Jovanovic's apartment and, without providing any explanation, ordered Jovanovic to accompany him to the precinct house for interrogation. (Compl. ¶¶ 17-18.) When Jovanovic requested an attorney, Bonilla placed him under arrest, charging him with Rape, Sodomy, and Unlawful Imprisonment. (Compl. ¶¶ 19, 21, 47.)

Later that same day, Bonilla and several other police officers returned to Jovanovic's apartment, searching for the items allegedly used in the assault (Compl. ¶ 49); but no such items were ever recovered from Plaintiff or his apartment. (Compl. ¶ 52.) During the search, two separate investigative teams took photographs of Jovanovic's apartment—photographs that revealed none of the items described by the alleged victim.[2] (Compl. ¶¶ 51, 53-54, 55.)

After searching Jovanovic's apartment, Bonilla prepared police reports containing false and misleading information regarding Jovanovic's arrest and the evidence allegedly collected at Jovanovic's apartment, which he then forwarded to the New York County District

[2] According to Plaintiff, these photographs "were subsequently 'lost' by Defendant Milton Bonilla and/or the New York City Police Department," and are the therefore unavailable to Plaintiff in making out his case. (Compl. ¶ 55.)

Attorney's Office. (Compl. ¶¶ 56-57.) He told prosecutors that he had observed incriminating evidence in Plaintiff's apartment, and that Jovanovic had "conspired to obstruct the police at the time of the search, and had destroyed incriminating evidence prior to the search," claims he knew to be false. (Compl. ¶¶ 58-59.) Bonilla repeated these false and misleading claims before the grand jury, the trial judge, and the petit jury. (Compl. ¶ 60.)

On December 6, 1996, Jovanovic was arraigned in the New York County Criminal Court. (Compl. ¶ 61.) Fairstein, the Chief of the Sex Crimes Unit of the New York County District Attorney's Office, personally appeared as the sole representative of that office. (Compl. ¶ 62.) Following the arraignment, Fairstein made "highly inflammatory and prejudicial remarks about Jovanovic to the press. (Compl. ¶¶ 63-64.) Fairstein was quoted as saying: "He terrorized this young woman to the point that she was too frightened to call the authorities until weeks after it happened"; "He tied her to a chair, undressed her, and tortured her with sex toys and other objects for almost a full day"; "[H]e tortured and sexually abused the woman, burning her with candle wax, biting her, sexually assaulting her and threatening to dismember her as Jeffrey Dahmer, the serial killer, had done with his victims"; He "tied the woman's legs to a chair and gagged her before sexually torturing her"; "[H]e was so prepared for this and carried it off so smoothly"; "We believe this was not the first time he did something like this"; and "We believe there are other victims." (Compl. ¶ 65.)

Fairstein's comments made the headlines of every local newspaper. For instance, one New York Post cover page featured a full page picture of Jovanovic and read, "Prosecutor: Cyber fiend struck before" and "HOW MANY MORE VICTIMS?" (Compl. ¶ 66.) Fairstein "repeatedly emphasized to the press that this was her office's 'first internet-related sex prosecution' and that the case represented a 'whole new entry in the acquaintance-rape

category.'"(Compl. ¶ 67.)  Throughout the proceedings, Fairstein continued to provide highly

damaging leaks to the press, "including but not limited to, releasing select portions of the e-mail

correspondence between [Plaintiff] and [the alleged victim] which further demonized

[P]laintiff." (Compl. ¶ 74.)

Coverage of the case in the press was so extensive that trial witnesses were

influenced by it.  "One material witness, Mary Jo Parlier Chambers, testified about critical

'facts' that she had actually learned from reading a newspaper article." (Compl. ¶ 138.)  These

alleged "facts" were addressed by both parties during summations, and became "the subject of a

read-back requested by the jury during their deliberations." (Id.)  At least three other material

witnesses gave testimony tainted by the pre-trial publicity. (Compl. ¶ 139.)

On April 15, 1998, the jury convicted Jovanovic of Kidnapping in the First

Degree, three counts of Sexual Abuse in the First Degree, Assault in the Second Degree, and

Assault in the Third Degree. (Compl. ¶ 80.)  Plaintiff was then sentenced to a term of 15 years to

life in prison. (Compl. ¶ 81.)  He served more than 20 months in prison. (Compl. ¶ 88.)  The

Appellate Division reversed Plaintiff's conviction on December 21, 1999, finding that the trial

judge improperly hampered the defendant's ability to present a defense by erroneously invoking

the rape-shield law, thereby denying the jury access to key evidence in the case. (Compl. ¶ 82.)

See People v. Jovanovic, 263 A.D.2d 182 (1st Dep't 1999).

Anticipating a second trial, the prosecution offered Jovanovic several plea deals.

The prosecution offered Jovanovic a deal wherein Jovanovic could avoid serving any further

time in prison, if he would plead guilty to a single felony charge. (Compl. ¶ 83.)  Maintaining his

innocence, Jovanovic refused. (Compl. ¶ 84.)  The prosecution then offered Jovanovic a promise

of no further prison time, if he would plead guilty to a single, non-sexual, misdemeanor charge.

(Id.)  Again, Jovanovic refused, maintained his innocence, and insisted on a trial. (Compl. ¶ 85.)

On November 1, 2001, the prosecution moved to dismiss all charges against Jovanovic.  (Compl.

¶ 86.)  The motion was granted and all charges were dismissed, with prejudice. (Compl. ¶¶ 86-

87.)

As a result of his arrest and prosecution, Jovanovic suffered damage both to his

career and to his reputation. (Compl. ¶ 91.)  Prior to his arrest, Jovanovic had completed his

research and written his thesis for a Ph.D. in Microbiology.  As a result of his arrest on

December 5, 1996, however, he was prevented from defending his thesis as scheduled on

December 20, 1996.  Consequently, Jovanovic was prevented from obtaining his Ph.D. for over

five years, thereby losing five years of wages as a computational biologist.[3]  (Compl. ¶ 95.)

Plaintiff also suffered physical and emotional injury.  While incarcerated at

Rikers Island and later at state prisons, Jovanovic was repeatedly strip-searched and humiliated.

(Compl. ¶¶ 100, 115, 121, 127.)  Further, Plaintiff was repeatedly threatened and attacked by

fellow inmates. (Compl. ¶¶ 88-89.)  On one occasion, an inmate stabbed him in the neck and

slashed his throat, as a result of which Jovanovic almost died. (Compl. ¶ 90.)

Jovanovic initiated this § 1983 action on October 27, 2004.  He alleges a number

of constitutional violations by Bonilla and Fairstein, including false arrest, malicious

prosecution, malicious abuse of process and denial of his right to a fair trial.  Defendants now

move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), claiming,

inter alia, that all of Jovanovic's claims are time barred,  that Jovanovic has failed to adequately

plead any of his claims, and that Defendants are entitled to immunity from suit.

---

[3] On May 7, 2002 Plaintiff defended his thesis and earned his Ph.D. with distinction from Columbia
University, receiving "departmental honors for outstanding and innovative work." (Compl. ¶ 94.)

**DISCUSSION**

I. STANDARD ON MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings is analyzed under the same standard as a 12(b)(6) motion to dismiss for failure to state a claim. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). When considering a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences from these allegations in the light most favorable to the plaintiff. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). The court need not accept as true, however, "conclusory allegations or legal conclusions masquerading as factual conclusions." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002) (internal quotation marks and citation omitted).

On a motion to dismiss, the plaintiff is not required to offer direct evidence of the alleged wrongful conduct. Instead, plaintiff must provide a "short and plain statement of the claim showing that he is entitled to relief." Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002). "A complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added).

In reviewing Defendants' motion, the Court is not limited to the four corners of the complaint, as Jovanovic urges. Rather, the Court may also consider as part of the complaint "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers, 282 F.3d at 152 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Further, the court may consider documents that are in the public record, and of which judicial notice may be taken under Federal

Rule of Evidence 201. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); Kramer v. Time Warner, Inc., 937 F.2d 767,773 (2d Cir. 1991).

"'When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding [a] motion to dismiss without converting the proceeding to one for summary judgment." Int'l Audiotext Network, 62 F.3d at 72 (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)). The Court may not, however, consider a document merely because a plaintiff possesses the document or has notice of its existence; plaintiff's reliance on the document in preparing the complaint is the determinative factor. See Chambers, 282 F.3d at 153 & n.3.

While Jovanovic did not attach any documents to his complaint, he refers at length to Ruzcek's statement to Bonilla, repeating most of her allegations. Clearly, Jovanovic had actual notice of all the information contained in the statement and has relied on it in framing his complaint. Thus, the Court may consider it in deciding Defendants' motion. Plaintiff also refers to what happened at the arraignment, the grand jury indictment, the trial, and the appeal, and he directly quotes from the Appellate Division's decision reversing his conviction. The Court will therefore take judicial notice of these documents and proceedings. The Court will consider these items only for the fact that they exist, however, and not for the truth of the facts set forth therein. See Fed. R. Evid. 201(b)(2); Vasquez v. City of New York, No. 99 Civ. 4606, 2000 WL 869492, at 1 n.1 (S.D.N.Y. June 29, 2000) (relying on public documents when considering motion to dismiss, but only for the fact that they exist).

II. CLAIMS AGAINST DETECTIVE MILTON BONILLA

A.  False Arrest

*1. Statute of Limitations*

Defendant urges the Court to dismiss Plaintiff's claim for false arrest as time barred by the applicable statute of limitations.  The Court declines to do so.  The statute of limitations for § 1983 claims brought in New York is three years. Owens v. Okure, 488 U.S. 235, 250-51 (1989).  "[A]lthough New York law provides the applicable statute of limitations, federal law governs the question of when a false arrest claim accrues." Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999).  Under federal law, "the time of accrual [is usually] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id. (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)).  Therefore, claims for false arrest ordinarily accrue at the time of the arrest. See Covington, 171 F.3d at 123.  Where a § 1983 action is attributable to an unconstitutional conviction or sentence, however, the action does not accrue until the conviction or sentence has been invalidated. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  "[T]he rationale for tolling the statute is to 'avoid[] parallel litigation over the issues of probable cause and guilt'"; a rationale that applies with equal force to claims of false arrest. Covington, 171 F.3d at 124 (quoting Heck, 512 U.S. at 484).

Heck teaches that on-going criminal prosecutions should not be handicapped by contemporaneous, parallel § 1983 actions.  This common sense rule has a limited exception, which the Defendants suggest should be used.  Because the false arrest claim would not necessarily undermine the conviction, the Defendants argue that the statute of limitation should commence running at the time of the arrest.  While it is difficult to imagine Defendants urging

this proposition, had Jovanovic begun his § 1983 action after the conviction was reversed in 1999, it suffices to say that at this early stage in the litigation, it is impossible to determine whether success on Jovanovic's false arrest claim would "necessarily imply the invalidity of his conviction and sentence." Heck, 512 U.S. 487. To make this determination, the Court must know what evidence the prosecution used to establish its case and what evidence the police obtained during the alleged false arrest. See Covington, 171 F.3d at 123. The Court is unable to glean this information from the complaint and incorporated documents. Therefore, dismissing Jovanovic's false arrest claim at this juncture, without giving him an opportunity to conduct discovery on this matter, would be premature. See, e.g., Covington v. City of New York, No. 98 Civ. 1285, 1999 WL 739910 (S.D.N.Y. Sept. 22, 1999) (refusing to grant a motion to dismiss based on timeliness of false arrest claim, where Court could not determine from face of Complaint the nature of the evidence upon which Plaintiff's conviction was based).

### 2. Probable Cause

Next, Defendants maintain that Plaintiff's false arrest claim must be dismissed because his December 5, 1996 arrest was supported by probable cause. It is well settled that "probable cause . . . is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996). "Probable cause to arrest exists under federal law 'when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Smith v. Edwards, 175 F.3d 99, 106 (2d Cir. 1999) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). Defendants argue that Ruzcek's statement was sufficient to create probable cause, and therefore Plaintiff's claim is deficient as a matter of law.

The fact that a victim provides the police with information of an alleged crime

does not, without more, establish probable cause. Rather, the officer has a duty to assess the reliability of the victim and, if circumstances call into doubt the victim's veracity, to investigate the allegations and corroborate them. As the Second Circuit explained in <u>Singer v. Fulton County Sheriff</u>, "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest *absent circumstances that raise doubts as to the victim's veracity*." 63 F.3d 110, 119 (2d Cir. 1995) (emphasis added). "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotation marks omitted); <u>see also</u> <u>Bullard v. City of New York</u>, No. 01 Civ. 11613, 2003 WL 168444, at *4 (S.D.N.Y. Jan. 20, 2003) (denying a motion to dismiss where the facts as alleged by the plaintiff in his complaint established that the victim was not a reliable source of probable cause, and yet "the defendants did nothing to investigate the allegations, corroborate them, or pursue [the plaintiff's] claims that he was innocent.").

Taking the allegations in Plaintiff's complaint as true, there were reasons to doubt Ruzcek's veracity when she made her statement to police. Not only were her accounts to Bonilla inconsistent, but she had waited four days before approaching police or seeking medical attention. When she did seek assistance, the medical and forensic evidence did not support her allegations. Furthermore, Ruzcek had a history of making false sexual accusations against men, a fact that Bonilla could have discovered with reasonable investigation. These facts, if true, are sufficient to raise doubt about Ruzcek's credibility, triggering a duty to investigate the incident further before arresting Jovanovic.

Bonilla's nine-day delay in arresting Jovanovic further undermines Defendants'

probable cause argument. Ruzcek's graphic and detailed statement to Bonilla alleged horrific

acts by the Plaintiff. If, as Defendants now claim, Ruzcek was completely credible and her

statement automatically created probable cause to arrest, then Bonilla would not have waited

nine full days before arresting Jovanovic. The fact that he did suggests that Bonilla himself

doubted Ruzcek's story at the time that it was made. If so, Bonilla had a duty to corroborate her

story, but he failed to do that. These allegations are more than sufficient to withstand

Defendants' pre-discovery motion to dismiss.

Defendants further argue that Plaintiff's indictment by a grand jury precludes a

claim for false arrest, as it creates a presumption of probable cause. While a grand jury

indictment does create a presumption of probable cause, see, e.g., Murphy v. Lynn, 118 F.3d

938, 948 (2d Cir. 1997), it is rebuttable "by evidence that the indictment was the product of

fraud, perjury, the suppression of evidence by the police or other police conduct undertaken in

bad faith." Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir. 1996). That is what Jovanovic alleges:

Bonilla fabricated evidence, destroyed evidence favorable to the defense, and offered false

testimony to the grand jury. Taking these allegations as true, the indictment was undoubtedly

the product of fraud, perjury, and the suppression of evidence. Thus, Plaintiff sufficiently rebuts

any presumption of probable cause for purposes of the current motion.

### 3. Qualified Immunity

Finally, Defendants claim that Bonilla enjoys qualified immunity from suit for

false arrest. The doctrine of qualified immunity "affords government actors broad protection

from personal liability 'insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person should have known.'" Eagleston v. Guido, 41

F.3d 865, 872 (2d Cir. 1994). In accordance with this standard, if a reasonable person should

have known that the action was constitutionally impermissible, the actor is not entitled to qualified immunity from suit. See <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143 (2d Cir. 2003).

Plaintiff alleges a violation of his Fourth Amendment right to be free from unreasonable seizure by police. "It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause." <u>Cook v. Shelton</u>, 41 F.3d 73, 78 (2d Cir. 1994) (quoting <u>Jeffries v. Harleston</u>, 21 F.3d 1238, 1248 (2d Cir.), <u>vacated on other grounds</u>, 513 U.S. 996 (1994)). No reasonable police officer in 1996 could have believed that arresting Jovanovic without probable cause was constitutionally permissible.

In this Circuit, however, a police officer may still be entitled to immunity, even if he arrested the plaintiff without probable cause, if he can show either that: "(1) it was objectively reasonable for him to believe he had probable cause; or (2) officers of reasonable competence could disagree whether probable cause existed." <u>Id.</u> The Court cannot say at this stage of the litigation that either of these two criteria is satisfied in this case. On the facts available to the Court, it appears that Ruzcek's statement was the sole basis for arresting Plaintiff; no other evidence existed that could create probable cause. As previously discussed, there were reasons to doubt Ruzcek's veracity, and therefore the validity of her statement, so that it may not have been "objectively reasonable" for Bonilla to believe he had probable cause based solely upon this statement. Removing the alleged victim's statement from the equation, no officer of reasonable competence could believe that Bonilla had probable cause to arrest Jovanovic. Thus, to the extent that Bonilla actually committed the wrongs alleged by Plaintiff, qualified immunity will not protect him.

B.  Malicious Prosecution

   *1. Sufficiency of Complaint*

To state a claim for malicious prosecution, plaintiff must allege: (1) defendant commenced or continued a criminal proceeding against him; (2) the prosecution ended in plaintiff's favor; (3) there was no probable cause for the proceeding; (4) defendant acted with actual malice; and (5) plaintiff suffered a deprivation of liberty under the Fourth Amendment. Murphy v. Lynn, 118 F.3d 938, 944-47 (2d Cir. 1997).  Defendants argue that Plaintiff fails to sufficiently allege any of these elements, and therefore the Court must dismiss his claim for malicious prosecution as a matter of law.  But Defendants' arguments are more evidentiary, and thus premature.  Mindful of the minimal notice pleading required under the Federal Rules, Plaintiff adequately pleads each of the five elements of a claim for malicious prosecution.

   *(a) Defendant commenced or continued a criminal proceeding against the Plaintiff*

It is without dispute that Bonilla commenced, and assisted in the continuance of, a criminal proceeding against Jovanovic.  Bonilla arrested Jovanovic and then filed charges against him that, according to the factual allegations in the complaint, he knew or should have known were false.  In this Circuit, a police officer's act of filing the charges is sufficient to establish the first element. See Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("[W]ith regard to the first element, a jury could clearly find that [the police officer] started the . . . prosecution by filing the charges.").  Thus, Bonilla's filing of charges alone would serve to establish the first element.

Furthermore, according to the complaint, Bonilla created and forwarded false information to the prosecution.  In Ricciuti, the Second Circuit observed that when an investigating officer forwards false evidence to a prosecutor, he has "played a role in initiating

the prosecution." 124 F.3d at 130.  As such, he has "commenced or continued a criminal proceeding" against the Plaintiff for purposes of a malicious prosecution claim. Id.

Finally, if Plaintiff's allegations are true, Bonilla falsely testified against Jovanovic at the grand jury and at trial.  In White v. Frank, the Second Circuit explained:

> The exercise of independent judgment by the public prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have 'caused' or 'procured' the prosecution . . . . As with the grand jury, however, the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability [for malicious prosecution] where the witness's testimony is knowingly and maliciously false.

855 F.2d 956, 962 (2d Cir. 1988).  Thus, if, as Plaintiff alleges, Detective Bonilla supplied false testimony regarding the evidence he observed in Jovanovic's apartment, then Bonilla may be considered "commenc[ing] or continu[ing]" the criminal prosecution against Plaintiff.

*(b) prosecution ended in Plaintiff's favor*

The dismissal of the indictment with prejudice ended the prosecution in Jovanovic's favor.  Contrary to Defendants' suggestion, an acquittal is not necessary.  As the New York Court of Appeals made clear in Cantolino v. Danner, "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." 96 N.Y.2d 391, 395 (2001).  A dismissal by the prosecution "in the interest of justice," as occurred in this case, may properly be considered a "favorable" termination. Id. at 395-96.  The termination of Jovanovic's case "in the interest of justice," was both final and "not inconsistent with" Jovanovic's innocence.  Thus, it is "favorable" under the law as set forth in Cantolino.

16

Defendants' argument that the conviction was reversed on a "legal technicality" so that Jovanovic's guilt was never called into question is frivolous. The reversal was not based on a "technicality," but rather on the Appellate Division's decision that there had been a fundamental misinterpretation of the rape shield law, which excluded certain critical evidence and deprived Jovanovic of a fair trial, see People v. Jovanovic, 263 A.D.2d 182 (1st Dep't 1999). After reversal and remand, Jovanovic was cloaked again in the constitutional presumption of innocence. The subsequent dismissal with prejudice in the interests of justice is fully "consistent with innocence."

*(c) no probable cause for the proceeding*

Defendant suggests that the same evidence that gave Bonilla probable cause to arrest created probable cause to prosecute. A fair reading of the pleadings calls into question whether Bonilla had probable cause to arrest. Moreover, probable cause to arrest, does not necessarily create probable cause to prosecute. "Under New York law, 'even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.'" Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (quoting Cox v. County of Suffolk, 780 F.Supp. 103,108 (E.D.N.Y. 1991)).

Probable cause to arrest cannot be a springboard for probable cause to prosecute, given the allegation of knowingly making false statements to prosecutors and grand and petit juries. As the Second Circuit observed in Ricciuti, "[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers a license to deliberately manufacture false evidence against an arrestee." 124 F.3d at 129-30. Jovanovic alleges in his complaint that Bonilla knowingly provided false testimony to the grand jury and the trial court. This is sufficient, at this stage, to establish a lack of probable cause for such malicious

prosecution, as Bonilla's alleged knowledge of his own falsehood presupposes a lack of probable cause.

*(d) defendant acted with actual malice*

"Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" <u>Lowth</u>, 82 F.3d at 573 (quoting <u>Nardelli v. Stamberg</u>, 44 N.Y.2d 500, 502-03 (1978). "[L]ack of probable cause," while not dispositive "tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." <u>Id.</u> (internal quotation marks and citation omitted); <u>accord</u> <u>Ricciuti</u>, 124 F.3d at 131 (noting that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment"). Here, since Plaintiff has adequately alleged lack of probable cause and knowing perjury, Plaintiff has adequately alleged malice.

*(e) Plaintiff suffered a deprivation of liberty under the Fourth Amendment*

Plaintiff's extended incarceration is sufficient to meet this prong without the need for extended discussion.

*2. Qualified Immunity*

As a pleading matter, the Court must reject the argument that Bonilla has qualified immunity from suit for malicious prosecution. The Fourteenth Amendment's due process clause includes a right to be free from malicious prosecution; and this right was clearly established at the time of Jovanovic's trial. <u>See</u> <u>Cook</u>, 41 F.3d at 79 (finding malicious prosecution to be a clearly established right). On the facts as alleged, any reasonable officer would have known that Jovanovic's Fourteenth Amendment rights would be violated by filing

baseless charges without probable cause, knowingly forwarding false information to prosecutors, and testifying falsely before a jury. Accordingly, to the extent that Bonilla actually committed the wrongs alleged by Plaintiff, qualified immunity will not protect him from suit.

C. Malicious Abuse of Process

*1. Statute of Limitations*

For the reasons previously stated, (see II. A.1 at p. 10 supra), the statute of limitations in the § 1983 action did not begin to run until the criminal prosecution terminated favorably to Jovanovic. Heck v. Humphrey, Id. at 489. (We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action . . . . [There is] no cause of action under § 1983 unless and until the conviction is reversed . . . That makes it unnecessary for us to address the statute-of-limitations issue wrestled with by the Court of Appeals . . . .)

*2. Sufficiency of Pleading*

Plaintiff's malicious abuse of process claim, however, is insufficiently pled. Under New York law, to maintain a claim of malicious abuse of process a plaintiff must plead: (1) defendants employed regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. Cook, 41 F.3d at 80. "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." Lopez v. City of New York, 901 F.Supp. 684, 691 (S.D.N.Y. 1995).

While Plaintiff adequately pleads the first two elements, he fails to plead the third. Plaintiff fails to state any collateral objective that Bonilla may have had for issuing

process that was outside the legitimate ends of process.[4]  Plaintiff alleges a collateral objective

only in the most conclusory fashion, failing to provide any basis for assessing Bonilla's motive

for the arrest. "[A] complaint which alleges [a collateral motive] in wholly conclusory terms may

safely be dismissed on the pleadings alone." <u>Duamutef v. Morris</u>, 956 F.Supp. 1118, 1119

(S.D.N.Y. 1997) (quoting <u>Flaherty v. Coughlin</u>, 713 F.2d 10,13 (2d Cir. 1983)).  While the abuse

of process claim must be dismissed, the Plaintiff is given leave to replead.  If there is a basis for

this claim, it will be allowed.

### 3. Qualified Immunity

Again, Defendants claim that Bonilla enjoys qualified immunity from suit for

malicious abuse of process.  Defendants, therefore, ask the court to dismiss the claim as a matter

of law.  If Plaintiff is able to provide additional facts to support his abuse of process claim, then

he will have adequately alleged the violation of his constitutional right to be free from malicious

---

[4]  In support, Defendants cite <u>Oathout v. Decker</u>, 99 Civ. 5868, 2000 U.S. Dist. Lexis 12001 (S.D.N.Y. 2000), in which Magistrate Judge Fox observed that "if a person uses the process of the court for its proper purpose, even though the person has malice in his heart or a selfish motive, there is no abuse of process." 2000 Lexis 12001 at *20 (citing <u>Chamberlain v. Lishansky</u>, 970 F.Supp. 118, 122 (N.D.N.Y. 1997)).  In the present case, however, Plaintiff claims that no proper motive existed, and therefore suggests that a collateral objective may be inferred from a lack of a proper motive.

The Magistrate Judge in <u>Oathout</u> also states: "[T]he collateral objectives typically associated with abuse of criminal process are extortion, blackmail or retribution; and those objectives are usually characterized by personal animus." 2000 U.S. Dist. Lexis 12011 at *20.  This list, though it captures the typical cases, is not exclusive. At least one other court in this District has held that any motive outside the legitimate ends of process, not just blackmail, extortion, or retribution, is sufficient to constitute an improper, "collateral" objective for purposes of a malicious abuse of process claim. <u>See, e.g.</u>, <u>Hernandez v. Wells</u>, No. 01 Civ. 4376 (MBM), 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 24, 2003) (finding plaintiff's allegations that corrections officer manipulated process to save his job sufficient to establish "collateral objective" requirement and withstand summary judgment).  Thus, motives such as protecting one's own job or currying favor with prosecutors may exceed mere malice and may constitute a "collateral objective." Plaintiff has alleged that Bonilla arrested Plaintiff only after "pressure from third parties," suggesting that Bonilla may have arrested Plaintiff and initiated his prosecution solely to save face or protect his job or to attempt to innovate a new internet, "cybersex torture" crime.  None is a proper objective justifying the issuance of process.  Unfortunately, such allusions are not adequate to support this claim on a motion for judgment on the pleadings.

abuse of process, as guaranteed by the Fourteenth Amendment's procedural due process clause. This constitutional right was clearly established at the time that Bonilla arrested Jovanovic and filed charges against him in 1996. See Cook, 41 F.3d at 80 (declaring, in 1994, that, "[i]n the criminal context, malicious abuse of process is 'by definition a denial of due process,'" and therefore will support a § 1983 claim). Thus, assuming the truth of Plaintiff's allegations, Bonilla should have known that he was violating Plaintiff's constitutional rights when he acted. To the extent that Bonilla actually committed the wrongs alleged by Plaintiff, qualified immunity will not protect him from suit.

D. Denial of Plaintiff's Right to Fair Trial

*1. Statute of Limitations*

Defendants erroneously contend that Plaintiff's claim against Bonilla for denial of a fair trial due to fabrication of evidence is time barred. A § 1983 claim for the denial of a fair trial is, in essence, a claim for "damages attributable to an unconstitutional conviction." Heck, 512 U.S. at 489-90. Therefore, as explained in Heck, Plaintiff's § 1983 claim did not accrue until the conviction was invalidated. See Heck, 512 U.S. at 489-90 ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); accord Amaker v. Weiner, 179 F.3d 48, 51-52 (2d Cir. 1999).

One does not have to be a soothsayer to predict what Defendants would have argued had Javanovic brought this § 1983 action after the conviction was reversed, but before the indictment was dismissed with prejudice. The Defendants would surely have urged the risk of inconsistent judgments. The District Attorney's office continued its prosecution of Jovanovic after the Appellate Division reversed his conviction, and remanded for a new trial. The criminal

proceedings continued, until they ended, when all charges against Plaintiff were dismissed with prejudice on November 1, 2001.  The underlying policy of Heck makes it very clear that the § 1983 statute-of-limitations did not begin to run until November 2001.  Jovanovic initiated his action on October 28, 2004, less than three years the criminal proceeding ended.  The action is timely.

### 2. An Independent Cause of Action

Defendants argue that Plaintiff fails to state a cause of action for denial of a fair trial against Bonilla that is independent and separate from his a claim for malicious prosecution. In Ricciuti v. New York City Transit Authority, the Second Circuit held:

> When a police officer creates false information likely to influence a jury's decision and [then] forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

Ricciuti, 124 F.3d at 130 (2d Cir. 1997); accord Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003); see also Zahrey v. Coffey, 221 F.3d 342, 355-56 (2d Cir. 2000) (recognizing long-established right against use of false evidence by governmental officials to obtain a conviction). Like this case, in Ricciuti the Plaintiff brought claims for both malicious prosecution and denial of a fair trial based on the same fabrication of evidence. See Ricciuti, 124 F.3d at 130-31.  The Second Circuit permitted both claims.  As these causes of action seem to coexist, Plaintiff may legitimately bring both.

### 3. Sufficiency of the complaint

Defendants further argue that Plaintiff's fair trial claim against Bonilla must be dismissed as insufficiently pled.  This argument confuses the standard of proof applicable to a motion for judgment on the pleadings with the standard applicable to a motion for summary

judgment. At this stage, all Plaintiff must do is plead facts that, if true, would sustain a cause of action for which relief may be granted. See Conley, 355 U.S. at 45-46. Plaintiff meets this minimal burden.

A claim for denial of a fair trial based on fabrication of evidence or false testimony arises if a police officer creates false information likely to influence a jury's decision and then forwards that information to prosecutors. Ricciuti, 124 F.3d at 130. In this case, Plaintiff pleads that Bonilla prepared police reports containing false and misleading information about Jovanovic's arrest and the evidence collected at Jovanovic's apartment, which he then forwarded to prosecutors. (Compl. ¶¶ 56-57.) He also pleads that Bonilla falsely reported to prosecutors that he had observed incriminating evidence in Plaintiff's apartment and falsely stated that Plaintiff had "conspired to obstruct the police at the time of the search, and had destroyed incriminating evidence prior to the search." (Compl. ¶¶ 58-59.) According to the complaint, Bonilla repeated these and other false statements before the grand jury and at trial. (Compl. ¶ 60.) These factual allegations, if credited, would more than adequately support Plaintiff's cause of action against Bonilla for denial of a fair trial.

*4. Qualified immunity*

Once again, Defendants argue that Bonilla is shielded from suit by the doctrine of qualified immunity. The right to a fair trial free of fabricated evidence is basic to our Constitution and was clearly established at the time that Bonilla allegedly acted. See Zahrey, 221 F.3d at 355-56. Any reasonable officer would have known that Plaintiff's rights would be violated by fabricating evidence and making false statements to prosecutors and the jury. Accordingly, to the extent that Bonilla actually committed the wrongs alleged in Plaintiff's complaint, qualified immunity will not protect him from suit.

III. CLAIM AGAINST ASSISTANT DISTRICT ATTORNEY LINDA FAIRSTEIN

Plaintiff pleads only one cause of action against Assistant District Attorney Fairstein.  He claims that Fairstein's extrajudicial statements to the press were so inflammatory and prejudicial that they denied Plaintiff his constitutionally protected right to a fair trial. Defendants seek to dismiss this claim on multiple grounds.  First, as with the claims against Bonilla, Defendants argue that the fair trial claim against Fairstein is barred by the applicable statute of limitations.  Second, Defendants claim that Plaintiff fails to adequately plead a claim for denial of a fair trial against Fairstein.  Finally, Defendants argue that Fairstein is protected from suit by the doctrines of absolute and  qualified immunity.

A. Statute of Limitations

As previously mentioned, Plaintiff's § 1983 claim against Fairstein did not accrue until the criminal proceedings terminated.  In <u>Martin v. Merola</u>, 532 F.2d 191 (2d Cir. 1976) (per curiam), a case in which the plaintiffs advanced similar claims of prejudicial extrajudicial statements by a prosecutor, the Second Circuit explained:

> Until the state prosecutions have been concluded, it is simply impossible to make any reasoned evaluation of plaintiffs' claim that they have been deprived of the opportunity to secure a fair trial by reason of defendants' actions. . . .
>
> Moreover, even if such determinations were possible, it would offend the principle of comity for a federal district court to inquire into plaintiffs' ability to secure a fair trial in a pending state prosecution. . . .  In implementing the policy of non-interference, federal courts must focus upon the practical impact of any potential ruling.  In addition, such parallel proceedings represent a drain on already overextended judicial and prosecutorial resources.

532 F.2d at 194-95 (internal citations omitted).  <u>Martin</u> thus affirms the <u>Heck</u> requirement that criminal defendants wait until criminal proceedings have terminated before seeking damages in

federal court. Jovanovic initiated this claim within three years of the termination of the criminal proceeding, and so it is timely.

B. Merits of the Claim

*1. The Sufficiency of the Complaint*

To prevail upon a claim for denial of a fair trial due to prejudicial publicity, a plaintiff must establish three elements: (1) that there were improper leaks; (2) that the plaintiff had *in fact* been denied a fair trial; and (3) that other remedies (e.g., voir dire, peremptory challenges, and challenges for cause) were not available, or were used to no avail, to alleviate the effects of the leaks. See Powers v. Coe, 728 F.2d 97, 105-06 (2d Cir. 1984). Defendants urge that Plaintiff failed to plead the third element, namely, that the procedural safeguards of voire dire and peremptory challenges were unavailable or used to no avail. Defendants rely on Powers, but they misunderstand its teaching. In Powers, which also dealt with a motion to dismiss prior to discovery, the Second Circuit actually refused to dismiss the plaintiff's denial of a fair trial claim. In so doing, the court explained: "Powers is entitled to the opportunity to show that his constitutional right to a fair trial was violated by the alleged leaks." 728 F.2d at 105. The court emphasized, however, that "its holding in no way diminishes the burden that the plaintiff must meet in order to *prove* his allegations," and its decision did "not foreclose, on appropriate papers, *summary judgment*." Id. at 105-06 (emphasis added).

Furthermore, the plaintiff in Powers never explicitly alleged in his complaint that pre-trial remedies were of no avail, and still the Second Circuit refused to dismiss his claim. See Powers, 728 F.2d at 106. The Powers court did not cite any allegations from Powers's complaint regarding the unavailability or the failure of voire dire and other procedural safeguards. Rather, the court merely recited Powers's allegations that the Chief State's Attorney leaked grand jury

information to the press "maliciously and in bad faith in order to prejudice public opinion against [Powers], deprive [Powers] of his right to an unbiased jury and a fair trial." Id. at 100. The court found these allegations sufficient to withstand a motion to dismiss. See id. at 106. Thus, in articulating the third prong, the Powers court appears to have set the stage for a motion for summary judgment, while making it clear that such particularity is not necessary at the pleading stage. See id. Thus, if anything, Powers suggests–rather strongly–that Defendants' motion be denied.

Defendants' reliance on Schiavone Construction Co. v. Merola, 678 F.Supp. 64 (S.D.N.Y. 1988), is equally misguided. In Schiavone, the District Attorney made all of his prejudicial statements before the trial began, and the court determined that voir dire and peremptory challenges sufficiently purged the jury of the prejudicial effects of such statements. Schiavone, 678 F.Supp at 65-66. Further, the court dismissed the plaintiff's fair trial claim largely because the trial jury had acquitted the plaintiff, thereby creating a strong presumption that the jury was unbiased. Id. at 66. Considering the trial jury's verdict in Schiavone, any allegation that the jury had been irremediably prejudiced would have been—beyond doubt—impossible for the plaintiff to prove.

Jovanovic's case is easily distinguished from Schiavone. Here, Plaintiff alleges that Fairstein, unlike the District Attorney in Schiavone, continued to make extrajudicial statements to the press throughout the criminal proceedings. Plaintiff's complaint suggests that this steady stream of "leaks" eliminated the safeguards of voir dire and peremptory challenge. (Compl. ¶ 79.) Fairstein's own statements to the Media Studies Journal support such an inference, most notably her comments about the effects of publicity on a jury:

> The period of greatest impact is pretrial because that could be anywhere from three months to a year. Depending on the coverage, people can become immersed in reading about the case. And from this reading-and-listening public come the people who sit on our juries. After the trial has begun, the jurors are given a rule—that they don't read or listen to media accounts of the case. Most people try hard to comply. But it's almost impossible with the highest-profile cases for it to really happen.
>
> When a case like Chambers, the jogger, the subway bomber or the World Trade Center bomber is on trial in New York—and it is literally a page A1 headline—our jurors are coming to work on the subway and the bus . . . I mean you can't sit on a train and not see what's there. . . . And you deal with a jury pool that is just saturated with that kind of information. You hope that you get jurors who are telling you the truth, that they can set aside what they've heard and just listen to the evidence in the courtroom. In the end, both sides use the press to great advantage before you get anywhere near the trial stage.

(Compl. ¶ 76.) Further, while the plaintiff in <u>Schiavone</u> was acquitted at trial, Jovanovic was convicted. Thus, unlike the court in <u>Schiavone</u>, this Court cannot say with certainty that the jury lacked all bias in Jovanovic's trial. Taking Plaintiff's allegations as true, there remains a possibility that, after discovery, Jovanovic may be able to prove his claim. Accordingly, the Court will not dismiss Plaintiff's claim against Fairstein.

### 2. Absolute Immunity

Defendants next contend that Plaintiff's claim against Fairstein is barred by the doctrine of absolute immunity. It is a well-established legal principle that "a state prosecuting attorney, acting within the scope of her duties in initiating and prosecuting a criminal prosecution, is immune from a civil suit for damages under § 1983." <u>Schmueli v. City of New York</u>, 424 F.3d 231, 236 (2d Cir. 2005) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410, 431 (1976) (internal quotations marks omitted)); <u>accord</u> <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993). But absolute immunity only "attaches to the official prosecutorial function"; activities that fall outside the scope of initiating and continuing a prosecution are not entitled to absolute

immunity. Id.; Powers, 728 F.2d at 103 (quoting Imbler, 424 U.S. 409, and Taylor v.

Kavanaugh, 640 F.2d 450 (2d Cir. 1981)). In light of this distinction, the Second Circuit made

clear that "only qualified good faith immunity is available where a prosecutor distributes

extraneous statements to the press designed to gain unfair advantage at trial." Powers, 728 F.2d

at 103. Fairstein made a number of statements to members of the press outside of the courtroom,

in a manner that can reasonably be described as beyond the scope of her official duties as

prosecutor.[5] As such, Fairstein does not have absolute immunity against Plaintiff's denial of fair

trial claim.

### 3. Qualified Immunity

Defendants argue that, even if Fairstein is not entitled to absolute immunity, she

is still entitled to qualified immunity. The Court does not agree. The constitutional right to a

fair trial, free from the taint of prejudice occasioned by a prosecutor's extrajudicial statements to

the press, was clearly established at the time that Fairstein allegedly made extrajudicial

statements to the press in 1996. See Powers, 728 F.2d at 105 (recognizing the constitutional right

to a fair trial, free from the bias occasioned by a prosecutor's prejudicial, extrajudicial statements

to press); Schiavone, 678 F. Supp. at 65 (finding, in 1988, that qualified immunity did not justify

dismissal of a fair trial claim based on extrajudicial statements to the press by a prosecutor). A

reasonable prosecutor would have known that Plaintiff's constitutional right to a fair trial might

be violated by making a continuing stream of prejudicial extrajudicial statements. Further,

Fairstein's comments to the Media Studies Journal imply that she fully understood the damaging

---

[5]  To the extent that Defendants argue that Plaintiff fails to establish that the alleged statements were made
outside the courtroom, defendant imposes a higher burden on Plaintiff than permitted on a motion to
dismiss. Plaintiff alleges in his complaint that Fairstein made statements to the press outside of the
arraignment or trial proceedings. Plaintiff provides quotes. These allegations are more than sufficient to
withstand Defendants' motion to dismiss.

effects of pretrial publicity. Accordingly, to the extent that the Fairstein actually committed the acts as alleged by Plaintiff, qualified immunity will not protect her from suit.

IV. CLAIMS AGAINST THE CITY OF NEW YORK

In <u>Monell v. Dep't. of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978), the Supreme Court expressly held that local governments and their agencies may be sued as "persons" under § 1983. 436 U.S. 658, 690, 701 (1978). Municipalities are not insurers or guarantors, however, and they are not liable on a theory of <u>respondeat</u> <u>superior</u> for the acts of their employees. <u>See</u> <u>Walker v. City of New York</u>, 974 F.2d 293,296 (2d Cir. 1992). Municipalities are liable only for their own misdeeds, that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694.

To ensure that a municipality is not held liable solely for the actions of its employees, a plaintiff must plead a municipal policy or custom that leads to the constitutional deprivation. <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 405 (1997). The complaint does not allege an official policy, but rather a municipal "custom," which does not require official sanction. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Id.</u> (quoting <u>Brown</u>, 520 U.S. at 404). To prevail on this theory, plaintiff must prove that the custom is a widespread and permanent practice, <u>see</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988), such that it is "so severe as to constitute 'gross negligence' or 'deliberate indifference' to a plaintiff's rights." <u>Sarus v. Rotundo</u>, 831 F.2d 397, 401 (2d Cir. 1987) (quoting <u>Zanghi v.</u>

Incorporated Vill. of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985)).

Plaintiff alleges that the City had a custom or practice of permitting prosecutors to make extrajudicial statements to the press in high profile cases. (Compl. ¶ 159.) Specifically, he alleges that the assistant district attorneys in the Sex Crimes Unit of the District Attorney's Office, when working on high-profile cases, routinely maligned the accused to the press, releasing information about defendants' prior arrest histories or criminal records and stating that the suspects had engaged in similar conduct before, even though there was no evidence to support such statements. (Id.) In addition, Plaintiff alleges a municipal custom or policy of allowing New York Police Department officials to leak information to the press by making "off-the-record statements" that contained otherwise non-public information. Finally, Plaintiff alleges a deliberate indifference by the City to the training and supervision of Assistant District Attorneys, which was so widespread and severe that it led to a "practice" of prosecuting innocent citizens for crimes they did not commit. To support all of these allegations, Plaintiff points to other high-profile trials, such as the "Central Park Jogger" case, the "Preppie Murder" case against Robert Chambers, the sexual abuse case against Dr. Patrick Griffin, and the internet sexual assault case against Paul Krauth. (Compl. ¶ 160.)

The Court must reject at this time the argument that Jovanovic's allegations are insufficient to establish municipal liability. Plaintiff alleges multiple policies or customs by the City and directly explains how they impacted his trial. He points to other cases in which similar conduct was carried out by City employees and he names specific policymaking officials that were involved in the allegedly violative conduct. While Plaintiff's allegations are vague, the Court finds they are sufficient to withstand Defendants' motion for judgment on the pleadings.

**CONCLUSION**

The Court denies Defendants' motion for judgment on the pleadings as to Plaintiff's claims for false arrest, malicious prosecution and denial of a right to fair trial against Bonilla and his claim for denial of a fair trial against Fairstein. The Court grants judgment on the pleadings in favor of Bonilla on Plaintiff's claim for malicious abuse of process, without prejudice to repleading the third element of the claim.

Dated: New York, New York
      August 17, 2006

                                        SO ORDERED

                                        _____

                                        PAUL A. CROTTY
                                        United States District Judge

## CONCLUSION

The Court denies Defendants' motion for judgment on the pleadings as to Plaintiff's claims for false arrest, malicious prosecution and denial of a right to fair trial against Bonilla and his claim for denial of a fair trial against Fairstein. The Court grants judgment on the pleadings in favor of Bonilla on Plaintiff's claim for malicious abuse of process, without prejudice to repleading the third element of the claim.

Dated: New York, New York
      August 17, 2006

SO ORDERED

PAUL A. CROTTY
United States District Judge